J-S15024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ELIAJAH FLEMING, | |
| Appellant | No. 2836 EDA 2014 |

Appeal from the Judgment of Sentence of May 15, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001341-2013.

BEFORE:  BENDER, P.J.E., OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                     **FILED MARCH 07, 2016**

Appellant, Eliajah Fleming, appeals from a judgment of sentence entered on May 15, 2014 in the Criminal Division of the Court of Common Pleas of Philadelphia County.  We affirm.

The trial court thoroughly summarized the facts and procedural history of this case as follows:

> Sixteen-year-old Yasin Harvey was shot and killed on May 2, 2012 in a drive-by shooting in West Philadelphia.  [Appellant] and co-defendant, Justin Brown ("Brown"), were arrested and charged with his murder.  From May 7-15, 2014, [Appellant] and Brown were tried together before a jury.
>
> [At trial, Police Officer Kevin Dorin was the first witness called to testify on behalf of the Commonwealth].  Officer Dorin stated that on March 27, 2012, he responded to a report of gunshots on the 600 block of Edgemore Road.  He observed six shell casings on the scene, contacted Southwest Detectives, and then waited for them to arrive.

*Retired Senior Judge assigned to the Superior Court.

Detective Vincent Parker testified next. He stated that on March 27, 2012, he and his partner, Detective Ortiz, investigated the shooting on the 600 block of Edgemore Road. At the scene, he discovered six shell casings and two bullet projectiles. After speaking with two neighbors in the area, Detective Parker went to the hospital to speak with victim Jamal Payne ("Payne"); however, he was unable to be interviewed as he was undergoing treatment. The next day, Detective Parker met with Payne, who refused to identify the shooter. On April 26, 2012, Detective Parker interviewed [Appellant] at Southwest Detectives and obtained a statement from him regarding Payne's shooting. [Appellant] told him that on March 27, 2012, he was kidnapped by three armed men, who forced him into a car. The three men beat him and stole his two cell phones and $90[.00] in cash, before driving him back to his home and demanding that he get more money for them. [Appellant] told Detective Parker that he went into his house, retrieved a firearm, and shot one of his abductors, later identified as Payne. Detective Parker testified that [Appellant] reviewed the written statement, initialed each page, and signed at the bottom.

Samir Green ("Green") testified next. He stated that on May 2, 2012, he was 15 years old and was spending time with his friend Yasin Harvey ("Harvey"). He and Harvey, along with two other friends, were standing outside of a store at the corner of 62nd and Callowhill, when a dark Pontiac with tinted windows pulled up and someone began shooting at them. Green testified that he saw someone leaning out [of] the front passenger window, firing a gun with his arm fully extended. He described the shooter as "[b]rown skinned, caramel" but did not get a good look at the shooter's face. Green stated that when he realized bullets were flying, he ran and ducked behind parked cars. After the Pontiac drove away, Green came out of hiding and saw Harvey lying in the street, trying to get up. Green ran inside a nearby house to hide in case the shooter returned. He testified that he looked out the window and saw people running to help Harvey so he and his friends returned outside and waited until Harvey was transported to the hospital. Green gave a statement to detectives later that same day.

Police Officer Jasmin Torres testified next for the Commonwealth. Officer Torres stated that on May 2, 2012, she and her partner, Officer Benson, heard gunshots near police headquarters. She then received a radio call, indicating that

someone had been shot near 62nd and Callowhill. When she arrived on the scene, she saw Harvey lying on the ground between two vehicles, covered in blood. Officer Torres put him in the backseat of her police vehicle and drove him to the emergency room. She remained at the hospital until Harvey was pronounced dead by medical personnel.

Next, Police Officer Gregory Yatcilla of the Crime Scene Unit testified. He stated that he responded to the report of a shooting at 62nd and Callowhill Streets. He took photographs of the scene and collected evidence, including blood samples, two bullets specimens and seven fired shell casings.

Police Officer John Cannon testified next as an expert in the identification and testing of firearms and ammunition. He stated that he analyzed the fired cartridge cases and two bullets recovered from the scene of the shooting [at 62nd and Callowhill Streets] and cross-checked them against ballistics evidence recovered from the March 27, 2012 shooting of Jamal Payne on Edgemore Road. He determined that the fired cartridge cases all came from the same firearm.

Farid Brown ("Farid") testified next for the Commonwealth. He denied that he was in the area of 62nd and Callowhill Streets on May 2, 2012 when Yasin Harvey was shot. He also denied giving a statement to Homicide Detective Tracy Byard on May 10, 2012, wherein he admitted being present at the scene of Harvey's death. In this written statement, which he initialed and signed, Farid told detectives that he knew [Appellant] and Brown "from playing basketball," and that [Appellant] drove a dark green Pontiac Grand Prix. Farid further told detectives that on May 2, 2012 he was at the store on the corner of 62nd and Callowhill and heard gunshots.

Next, Police Sergeant Bob Wilkins testified. He stated that he met with Brown at police headquarters on August 25, 2012 and questioned him regarding the murder of Yasin Harvey. In his statement, Brown told Sergeant Wilkins that Kareem Terry, a/k/a "Reem," shot Harvey[. In addition, Brown] relayed the following version of events: Brown, another man and Kareem were driving around in a car together, smoking weed and on their way to meet some girls. As they drove by the corner of Felton and Callowhill, the driver stopped and Kareem rolled down the window and started shooting from the back seat, trying to

hit Farid before he entered the corner store. This was a retaliatory response to Farid's murder of Stephen Hamilton, Brown's best friend. When Kareem was done shooting, the driver of the vehicle then sped away. Brown asked, "What the fuck is wrong with you all?" and then jumped out of the front passenger seat at the next red light. He said [he] never saw the driver or Kareem Terry again. Sergeant Wilkins testified that Brown told him he hadn't come forward with this information sooner because he was scared and knew he had outstanding warrants on unrelated matters. Wilkins showed Brown a photograph of Yasin Harvey; however, Brown told him that he did not know Harvey and was unable to identify him from the photograph.

Gary L. Collins, M.D., Deputy Chief Medical Examiner, testified as an expert in forensic pathology. He testified that he examined Yasin Harvey's body and determined that he died as a result of multiple gunshot wounds: one to his head, two to his chest, and one to his arm. The gunshots to the chest would have been fatal to Harvey even if he had not been fatally shot in the head.

Next, Police Officer Ronald Burgess testified for the Commonwealth. He stated that on May 9, 2012, he spotted [Appellant] driving in a dark green Pontiac vehicle with heavily tinted windows that matched the description of the car involved in Harvey's shooting. He stopped the vehicle and discovered that Kareem Terry, the car's owner, was sitting in the front passenger seat. Both [Appellant] and Terry were taken into custody. Burgess testified that he knew the area of 62nd and Callowhill very well, and knew Jamal Payne to frequent this area.

Detective Tracy Byard testified next. He stated that he executed a search warrant at [Appellant's] house and recovered several pieces of mail as well as a funeral card for the services of Stephan C. Hamilton. Byard further testified that during the course of the investigation, he came into contact with Brown, and noted that Brown had the numbers "six four" surrounded by skulls tattooed on his arms, as well as the word "Callowhill" tattooed across his back. Byard stated that he and his fellow police officers searched for Brown from May 8, 2012 until August 25, 2012, when he was finally apprehended.

Kareem Terry ("Terry") testified next for the Commonwealth. Terry stated that on May 2, 2012, [Appellant] (also known as

"Lihj") and Brown (also known as "Dot") picked him up at his home. Terry testified that [Appellant] was driving the car, Brown was in the front passenger seat, and he was in the backseat alone. As they drove down 62nd Street, [Appellant] spotted a group of males on the corner. He circled the block and then pointed out the males as members of "Deuce." Brown began firing a gun at them. Terry testified that Brown shot approximately six times. [Appellant] drove away, and turned down a small block between Callowhill and Vine Streets. Terry testified that his ears were ringing from the gunshots so he asked to be let out of the vehicle. He then walked back to his house at Callowhill and Simpson Streets. Three days later, on May 5, 2012, Terry was taken into police custody. He testified that he told the police that the car [Appellant] was driving was registered [in Terry's name] but that it actually belonged to [Appellant]. [Appellant] paid for the vehicle but gave Terry a couple hundred dollars to put the car's paperwork in Terry's name because [Appellant] did not have a valid driver's license. Terry then reviewed the statement he gave police on May 5, 2012. In this statement, he described the shooting as follows:

Like I said, it was Dot who shot at the crowd and the boy must have been in the crowd. I was in the back seat of the car when Dot lit up the crowd. The car is in my name but Lihj gave me some money to put the car in my name. I ride around with them once in a while but the car is in my name for the papers only. Lihj always drives that car.

The night the boy got killed I was riding with Lihj and Dot. Dot was in the front on the passenger side. Lihj was driving. Lihj drove by Sixty-Second Street and there was a crowd on the corner. Lihj drove by it and then went around the corner and started coming up on the crowd again. Lihj told Dot, yo, there goes them Deuce niggas right there, shoot them. Dot then pulled a gun from I think from under the seat or the side well on the door cause I seen him reach down. I didn't know there was a gun in the car. I just seen Dot reach down, then come up with the gun and he started lighting up the crowd that was there.

Then Lihj drove off. I was like what the fuck. Lihj got to like Sixty-Third and Vine and I was yelling, yo, let me the fuck out. I didn't want no part of anything. I got out of the car and Lihj and Dot drove off. You see, Sixty-Fourth and

- 5 -

Callowhill been going through it with anybody on Callowhill that is on the other side of Sixty-Third Street. I just walked off and went home.

The next day I was around on Sixty-Fourth and Dot and Lihj were talking about it and word was out one of the boys in the crowd that got hit died. Lihj was saying how he still had the gun in his car. That's when Dot told Lihj, yo, you got to get rid of that gun. Lihj said he would get rid of it but I don't know what he did with it.

Terry testified that [Appellant] was the leader of the 64th and Callowhill gang and that he "has everyone else do his dirty work." He further testified that [Appellant] previously had been kidnapped by members of Deuce and that there had been a lot of "back and forth" after that between the two gangs. Terry stated that he was currently incarcerated, awaiting trial for attempted murder, that he had immunity with respect to his involvement in the murder of Yasin Harvey, but he did not have any deals with the Commonwealth that would benefit him in his ongoing attempted murder case. He stated that [Appellant] called him at home from prison several times after his arrest. A redacted audio recording of these phone calls was then played for the jury. Terry testified that during the phone conversations, [Appellant] instructed Terry not to point the finger at him and told him not to tell the police that [Appellant] initiated everything. Terry assured [Appellant] that he was not going to testify in court; however, he appeared at the preliminary hearing and identified [Appellant] as the driver of the vehicle.

At the conclusion of Terry's testimony, counsel [for the parties] entered evidence [into the record] by way of stipulation[.] Counsel first stipulated to a certificate of non-licensure, stating that [Appellant] was not licensed to carry a firearm. Counsel then stipulated to another certificate of non-licensure, indicating that Brown was not licensed to carry a firearm. The Commonwealth moved its exhibits into evidence and rested. [Appellant's] counsel moved for a judgment of acquittal. This motion was denied and the defense rested. The jury found [Appellant] guilty of first-degree murder, criminal conspiracy, and carrying a firearm without a license.

[] On May 15, 2014, th[e trial c]ourt sentenced [Appellant] to the mandatory sentence of life imprisonment without the

possibility of parole. [Appellant] was further sentenced to 10 to 20 years state incarceration on the conspiracy charge, and 3½ to 7 years state incarceration [for carrying a firearm without a license], to run concurrently with his term of life imprisonment.

[Appellant] filed a post-sentence motion on May 23, 2014. This motion was denied by operation of law on September 24, 2014. [Appellant filed a notice of appeal on October 3, 2014.] On October 14, 2014, [the trial c]ourt order[ed Appellant to] file a [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal [p]ursuant to Pa.R.A.P. 1925(b). [A concise statement was filed on behalf of Appellant on February 12, 2015, following the appointment of appellate counsel.] [On appeal, Appellant raises the following issues for appellate review: (1) whether the evidence was sufficient for the jury to find Appellant guilty of all charges; (2) whether the verdict was against the weight of the evidence; (3) whether the trial court properly denied Appellant's request for a mistrial; and, (4) whether the trial court improperly prohibited defense counsel from engaging in full and fair cross-examination and impeachment of Commonwealth witness Kareem Terry.]

Trial Court Opinion, 5/27/15, at 1-9 (record citations omitted).

We have carefully reviewed the certified record, the submissions of the parties, and the thorough opinion issued by the trial court. Based upon our review, we are persuaded that the trial court adequately and accurately assessed each of the claims raised on appeal. We therefore concur with the trial court's determinations that: (1) sufficient evidence supported Appellant's convictions for first-degree murder, conspiracy, and carrying a firearm without a license; (2) the verdict was not against the weight of the evidence; (3) the court did not abuse its discretion in denying Appellant's request for a mistrial given the minimal prejudice that resulted from the contested testimony regarding Appellant's post-arrest silence, the court's

decision to strike the testimony from the record, the curative instruction issued to the jury, and the overwhelming quantity of inculpatory evidence that supported Appellant's guilt; and, (4) the trial court did not abuse its discretion in prohibiting Appellant's trial counsel from cross-examining Terry about collateral matters unrelated to his testimony in the present case. *See* Trial Court Opinion, 5/27/15, at 17-30 and 33-35. Since the record supports the trial court's findings and since the court's conclusions are consistent with applicable Pennsylvania law, we adopt the court's assessments as our own. We direct the parties to include a copy of the trial court's opinion with all future filings relating to the disposition of this appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/2016